UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

RICK  FEARS,                                )
                                            )
                        Plaintiff,          )
                                            )
            vs.                             )
                                            )        3:13-cv-00189-RLY-WGH
PIKE COUNTY SCHOOL                          )
CORPORATION,                                )
                                            )
                        Defendant.          )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rick Fears, is a former teacher and administrator of Otwell Elementary

School.  After the Pike County School Corporation ("PCSC") voted to cancel his

Teacher's Contract, he filed the present lawsuit alleging the PCSC breached the terms of

his Teacher's Contract, and that the Superintendent of the PCSC, Suzanne Blake, treated

him differently than other similarly situated administrators.  PCSC now moves for

summary judgment.  For the reasons set forth below, the court **GRANTS** PCSC's

motion.

I.      **Background**

Commencing with the 2012-2013 school year, all school corporations in Indiana

were required to develop and implement a plan to evaluate the performance of each

certified employee on an annual basis.  IND. CODE § 20-28-11.5-4.   As permitted by

statute, the PCSC adopted the more rigorous RISE Program, developed and approved by

the Indiana Department of Education, for the evaluations of teachers. RISE required the principal of each school to evaluate that school's teachers a total of five times during the course of the school year. Although there were no specific dates when each of the five evaluations was due, the RISE Program suggested that one be performed each quarter, with a mid-year review. (Filing No. 29-7 at 9). Superintendent Blake testified that teacher evaluations are significant for two reasons. First, as of 2011, seniority no longer played a role in a reduction in force situation; instead, PCSC was first required to consider teacher evaluations. Second, teacher evaluations play a role in performance or incentive pay.

The RISE Program required the administrators to learn to use a new software program, known as SDA. All administrators, including Plaintiff, received instruction and training on the new program in the Spring of 2012, as well as in July and September 2012. iPads were provided for use of the software. Additional training was provided in January 2013, but Plaintiff did not attend.

On December 14, 2012, Superintendent Blake met with Plaintiff out of a concern that he had not begun an evaluation on the School's evaluation program. Superintendent Blake met with Plaintiff again on April 24, 2013, noting that Plaintiff had begun 35 evaluations, but none were completed. Some of the evaluations he entered were from the first semester, but were not entered into the system until March 2013. Superintendent Blake asked for copies of Plaintiff's written observation notes. Plaintiff informed Superintendent Blake that he either could not find them or had thrown them away.

Instead, he relied on his "mental notes." Plaintiff did not complete all of the evaluations until after the school year ended.

The Board of School Trustees of the PCSC found the evaluations Plaintiff submitted were not credible. The teachers who testified did not remember a formal evaluation until the last 9 weeks of the school year. In addition, some of the teachers noted mistakes in their evaluations. For example, one teacher noted that her evaluation was performed in May, but Plaintiff's evaluation for that teacher stated that it occurred in April. In another evaluation dated November 8, 2012, Plaintiff referred to the teacher using an adaptive learning computer program called "ScootPad," yet PCSC did not have access to that program until January of 2013.

Aside from Plaintiff's failure to abide by the RISE Program, Superintendent Blake noted other concerns with his performance. For example, in mid-April of 2013, Plaintiff released a photograph of the third-grade class to the local newspaper, along with their names, as a means of congratulating the entire class for passing the IREAD-3 test. Superintendent Blake discussed this issue with him, as it was a violation of the Family Educational Rights and Privacy Act ("FERPA") to publish that information.

In addition, in 2010, Plaintiff requested that his secretary falsify the attendance records for 15 students by changing their records to reflect that they were present, and not absent, in order to make the School's attendance rate appear better. The secretary refused to do so, and testified that she believed that Plaintiff changed the attendance records of those students at a later time when she was not present.

3

On July 1, 2013, Superintendent Blake sent Plaintiff notice of her preliminary decision to consider cancellation of Plaintiff's Teacher's Contract. The Notice identified the reasons for cancellation as follows:

(1)     Neglect of Duty under Indiana Code § 20-28-7.5-1(e)(5) – Plaintiff did not adhere to the guidelines established for teacher evaluations nor did he adhere to the guidelines of the RISE model.

(2)     Insubordination under Indiana Code § 20-28-7.5-1(e)(2) – Plaintiff failed to comply with a request from the Superintendent for written documentation regarding a specific situation. He also displayed an argumentative and challenging manner when disagreeing with corporation decisions.

(3)     Other Good and Just Cause under Indiana Code § 20-28-7.5-1(e)(7) – Plaintiff demonstrated unprofessional and/or unethical behavior by violating testing guidelines, FERPA guidelines and attempted to alter data for a state report.

Pursuant to Title 20, Article 28 of the Indiana Code, Plaintiff timely requested a private conference with Superintendent Blake, and the two met on August 7, 2013. During the conference, Plaintiff requested a conference with the Board of School Trustees. The conference (or hearing) was held on August 27, 2013, wherein Plaintiff, Superintendent Blake, Phil Clauss, the Director of Technology, and eight elementary school teachers under Plaintiff's supervision, testified, and exhibits were entered into evidence.

On September 3, 2013, the Board voted to adopt the hearing officer's Findings of Fact and Conclusions of Law, unanimously "conclud[ing] that a preponderance of the evidence does not support the cancellation of Plaintiff's contract on the ground of Insubordination, but that a preponderance of the evidence does support the cancellation of Plaintiff's contract on the grounds of Neglect of Duty and Other Just and Good Cause." (Filing No. 19-2, at ECF p. 10).

## II.      Standard of Review

The court's review of an administrative decision is limited to determining whether the Board's decision "is supported by substantial evidence, that it is not arbitrary and capricious, and that the Board has complied with all relevant rules of law and procedure." *Fiscus v. Bd. of Tr. of Cent. Sch. Dist. of Greene Cnty.*, 509 N.E.2d 1137, 1140 (Ind. Ct. App. 1987) (citation omitted).  *See also Stewart v. Fort Wayne Cmty. Sch.*, 564 N.E.2d 274, 277 (Ind. 1991) ("If the procedural requirements are followed, including the assignment of a legal cause for cancellation [of the contract], and if there is substantial evidence presented which tends to support the legal cause, and if the hearing is, in fact, fair, the proceeding is lawful.").  The court "may not weigh the evidence nor adjudge the credibility of the witnesses, even if [the court] may have drawn a different conclusion." *Fiscus*, 509 N.E.2d at 1141.  The court may only vacate the Board's decision "if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the [Board] are clearly erroneous." *Stewart*, 564 N.E.2d at 278.

## III.      Discussion

### A.      Breach of Contract

Plaintiff first alleges that the PCSC failed to comply with the provisions of Indiana Code § 20-28-7.5-2(g)(1) and (2). That statutory section, entitled Procedures for Cancellation, provides that, after a private conference with the superintendent, the teacher may file a request with the "governing body for an additional private conference", during which the governing body shall:

> (1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. . . .

> (2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

Plaintiff argues the PCSC failed to comply with this statutory mandate because the administrative hearing, which began at 5:00 p.m. on August 27, 2013, lasted far longer than was represented by PCSC's counsel. The last witness for PCSC was Superintendent Blake, who took the stand at approximately 9:00 p.m. Plaintiff objected to the late hour, noting for the record that it was not fair to expect the Board to be fully attentive. The hearing officer determined the hearing should continue. Plaintiff contends that, by the time Superintendent Blake's testimony had concluded, "the hour was too late for continuation." Ergo, he was denied a reasonable opportunity to challenge the Board.

The court has read the entire transcript of the proceedings held on August 27, 2013, and finds that the statutory procedures were followed and that the hearing was fair. Superintendent Blake was the last witness called by PCSC. Immediately following her testimony, the hearing officer asked Plaintiff if he was ready to proceed. He responded, "We rest. It's their burden." (Filing No. 19-3, at ECF p. 301). The fact that Plaintiff

6

decided to rest his case rather than present witnesses or request a continuation of the proceedings speaks to a decision not to take advantage of the opportunity to present witnesses and evidence; it does not suggest the absence of opportunity to do so.

Plaintiff also complains that the hearing officer allowed hearsay evidence on two occasions, over his objection. The first of these occurred during that part of Superintendent Blake's testimony in which she questioned the reliability of Plaintiff's evaluations of his teachers. To substantiate that point, PCSC's counsel put before her the evaluation of one of Otwell's teachers, which had already been admitted into evidence as Exhibit 9-A, as a business record. (Filing No. 19-3, at ECF pp. 180-182). Superintendent Blake noted that, although this particular teacher was rated "effective" in all categories, Plaintiff rated her as "highly effective." (Filing No. 19-3, at ECF pp. 194-195).

The second objection was raised when Superintendent Blake testified that some teachers had contacted the UniServ Director with the Indiana State Teachers Association seeking advice on whether to sign evaluations if they are "not right," and were told "they should not sign" the evaluation form. (Filing No. 19-3, at ECF p. 208). The hearing officer overruled Plaintiff's objection, stating that "hearsay is not automatically excluded under administrative hearings" and that "testimony of this nature should go to the weight of the evidence, not for the admissibility per se." (Filing No. 19-3, at ECF p. 209).

As observed by the hearing officer, hearsay is admissible in administrative hearings. *Hierlmeier v. North Judson-San Pierre Bd. of Sch. Tr.*, 730 N.E.2d 821, 826 (Ind. Ct. App. 2000) (citing *Hinkle v. Garrett-Keyser-Butler Sch. Dist.*, 567 N.E.2d 1173,

1178 (Ind. Ct. App. 1991)). However, "[i]f hearsay evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence." *Id*. Some corroborative evidence in support of the school board's decision is necessary. *Id*.

Both of Plaintiff's objections fall within exceptions to the hearsay rule. With regard to Plaintiff's first objection, Exhibit 9-A was previously admitted under the business records exception, and was used to explain why Superintendent Blake questioned the accuracy and reliability of Plaintiff's RISE evaluations. With regard to Plaintiff's second objection, Superintendent Blake's statement that some teachers had contacted the UniServ Director for advice and were told "they should not sign" was not offered to prove the truth of the matter asserted; instead, it was used as a means of explaining why Superintendent Blake informed the teachers they "did not have to" sign the evaluation forms if they were not comfortable doing so. *Goodson v. State*, 747 N.E.2d 1181, 1185 (Ind. Ct. App. 2001), *trans. denied* (out-of-court statements introduced to explain why a particular course of action was taken is not hearsay because it is not offered to prove the truth of the matter asserted).

Next, Plaintiff takes issue with the Board's Finding of Fact No. 25, which reads:

> In 2010, Mr. Fears requested his secretary to falsify the attendance records for fifteen (15) students by changing [sic] from absent to present in order to make Otwell School's attendance rate appear better. Upon the secretary's refusal to make such a change, Mr. Fears himself altered the records from absent to present.

Plaintiff argues this fact is clearly erroneous for two reasons. First, the secretary testified she could not remember if the students were absent or not. Second, to the extent Plaintiff

8

did in fact ask his secretary to falsify records, it occurred too long ago to be relevant to

the present case.

The secretary testified that she "refused" to change the attendance records dated

May 28-June 14, 2010 (Exhibit 8-A), because "it's not a moral thing to do." ([Filing No.](#)

[19-3, at ECF p. 172](#)).  The questioning continued as follows:

> Q:     Okay.  Did you know that [Plaintiff] subsequently changed them?
>
> A:     . . . . I had a suspicion, but I did not know for sure until I went back
>        and looked at the percentage from the time that I last looked at the
>        records the last day of school.
>
> ***
>
> Q:     Okay.  Was there any question in your mind that these students
>        were, in fact, absent?
>
> A:     Well, for me to remember that, this – I cannot.

(*Id*.).  The court finds Finding of Fact No. 25 is not clearly erroneous.  The Board was

entitled to believe her testimony, notwithstanding the fact that she could not remember

which specific students were absent on a given day.  Moreover, when shown Exhibit 8-A

on cross-examination, the secretary testified that it "says the records have been deleted,"

and that they were "changed by [Plaintiff]."  ([Filing No. 19-3, at ECF p. 173](#)).

The court further finds the Board was entitled to consider that evidence,

notwithstanding the fact that it occurred more than three years before the hearing.

Evidence of dishonesty is relevant to Plaintiff's fitness to maintain his position as an

administrator.

Notably, Plaintiff did not object to Finding of Fact No. 26, which is equally as

damning as Finding of Fact No. 25:

> [Plaintiff] had also requested the secretary to alter and falsify attendance
> records by treating some students as "withdrawn" and then showing "newly
> enrolled" when they returned to school instead of "absent" so that Otwell's
> attendance record would be further improved. The Secretary refused to do
> so.

(Filing No. 19-2, at ECF p. 8). Thus, even if Finding of Fact No. 25 was clearly

erroneous, Finding of Fact No. 26 clearly supports the Board's Conclusion of Law No. 5,

stated below.

Lastly, Plaintiff complains that the Board's Conclusions of Law Nos. 3, 5, and 6

are not supported by substantial evidence. They read as follows:

> 3. Mr. Fears, Principal of the Otwell Elementary School, has neglected
> and ignored his duties to evaluate teachers pursuant to the RISE
> Program adopted by the School Corporation. The reports prepared
> are unreliable, often unsubstantiated, and in some instances false.
> Such conduct constitutes neglect of duty.
>
> 5. Mr. Fears did violate the test disclosure results for IRead 3 by
> disregarding the embargo and further releasing information knowing
> that the same was not to be released except through Mr. Harding (the
> Assistant Superintendent). Mr. Fears further violated FERPA
> Guidelines by publicizing students' names and passing grades. In
> addition, Mr. Fears requested an employee to alter official records
> which would have resulted in a falsification of those records, and
> when the employee refused to do so, he himself falsified the same.
> Such conduct exhibits a lack of trustworthiness that is inappropriate
> for a Principal and Teacher in the Pike County School Corporation
> and constitutes other good and just cause.
>
> 6. The Board of Trustees concludes that a preponderance of the
> evidence does not support a cancellation of Mr. Fears' contract on
> the ground of Insubordination, but that a preponderance of the
> evidence does support the cancellation of Mr. Fears' contract on the
> grounds of Neglect of Duty and Other Just and Good Cause.

Viewing the record as a whole, the court finds there is substantial evidence in the record supporting the Board's Conclusions of Law Nos. 3, 5 and 6. Every witness who testified supported the Board's Conclusion of Law No. 3 that Plaintiff failed to comply with the RISE Program. The testimony of the School's Technical Director, Mr. Clauss, and of Superintendent Blake was particularly persuasive. With regard to Conclusion of Law No. 5, it is undisputed that a picture of the third grade class was published in the local newspaper, with their names, congratulating them on passing the IRead 3 test. While it does not appear that grades were published, the Board found that "while actual letter grades were not publicized [sic] the fact that all students passed is equivalent to a disclosure of grades." (Filing No. 19-2, at ECF p. 9). Superintendent Blake testified that the fact that the students' names were published "crossed the line." (Filing No. 19-3, at ECF p. 231). On the surface, one could find this a trivial matter; however, it was a technical violation of FERPA. Lastly, with regard to the falsification of records, the Board was entitled to believe the testimony of the School secretary.

In sum, the court finds the Board's decision was not arbitrary or capricious, was made within the bounds of the law, and was supported by substantial evidence.

### B.     Employment Discrimination

Plaintiff alleges he was treated differently than other similarly situated administrators in the PCSC. The entire basis of this claim is premised on his belief that Superintendent Blake "had an unspoken, undisclosed agenda for [Plaintiff's] termination, and the reasons she placed before the board were pretextual." (Filing No. 25, at ECF p.

11

14).  The court is somewhat confused by this argument, as he has put forth no evidence

that he is a member of a protected class, a necessary element in any employment

discrimination case.  *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 777 (7th Cir. 2013)

(A plaintiff seeking to survive summary judgment must produce enough evidence from

which a rational jury could conclude that the employer took the adverse action against the

plaintiff because he is a member of a protected class").  Nor has he produced any

evidence that he was treated less favorably than a similarly situated individual outside of

any protected class.  *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (listing

prima facie elements).  Indeed, the evidence demonstrates that Superintendent Blake

evaluated all of her administrators the same way.  (Filing No. 19-3, at ECF p. 284 ("I've

evaluated all the administrators in the same way.")).  Thus, while Plaintiff believes that

Superintendent Blake's "entire demeanor and her testimony was clearly acrimonious and

biased as it related to [Plaintiff]," personal animus, even if proven, does not state a claim

for employment discrimination.

## IV.    Conclusion

The PCSC's decision to cancel Plaintiff's Teacher's Contract was lawful, fair, and

supported by substantial evidence.  It's motion for summary judgment (Filing No. 18) is

therefore **GRANTED**.

**SO ORDERED** this 30th day of July 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.